# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

July 10, 1998

Cecil W. Crowson
Appellate Court Clerk

BOB PARKS, JOHN E. HARNEY, III,  )
and GARY BOWMAN,                 )
                                 )
    Plaintiffs/Appellees,       )
                                 )   Appeal No.
                                 )   01-A-01-9708-CH-00412
VS.                              )
                                 )   Rutherford Chancery
                                 )   No. 97CV-180
WILLIAM J. REINHART and wife,    )
JUDITH F. REINHART,              )
                                 )
    Defendants/Appellants.      )

APPEALED FROM THE CHANCERY COURT OF RUTHERFORD COUNTY
AT MURFREESBORO

THE HONORABLE JAMES L. WEATHERFORD, JUDGE

JOHN G. MITCHELL, JR.
120 E. Main Street
P. O. Box 1336
Murfreesboro, Tennessee 37133-1336
    Attorney for Plaintiffs/Appellees

LAURA TEK
1994 N. Gallatin Road
Madison, Tennessee 37115
    Attorney for Defendants/Appellants

AFFIRMED AS MODIFIED
AND REMANDED

BEN H. CANTRELL, JUDGE

CONCUR:
KOCH, J.
CAIN, J.

# O P I N I O N

This is a dispute over a drainage easement. The Chancery Court of Rutherford County reformed the deed from the defendants to the plaintiffs to include a description of the easement. We affirm the lower court's judgment, but we modify the judgment to reflect the purchasers' obligation to keep the easement cleaned out.

## I.

Mr. and Mrs. William J. Reinhart owned a large tract of land on the Manchester Highway just outside of Murfreesboro. They divided it into nine separate tracts and held an auction. At the auction the auctioneer announced that the owners (Mr. and Mrs. Reinhart) or the purchaser of Lot 9 would grant an easement across the lot to accommodate the natural drainage of surface water from the other lots. The plaintiffs, Bob Parks, John E. Harney, III and Gary Bowman, bought Lots 1-8 at the sale. The owners and sellers signed a contract reflecting the transaction and including the following provision: "Easement will (be) granted to purchaser across (#) 9 tract for development of Tracts 1-8." Mr. and Mrs. Reinhart retained Lot 9.

The deed to the purchasers, however, did not mention the easement, and the Reinharts refused to sign a letter consenting to the purchasers' drainage plan for the property. The purchasers then filed this action for a mandatory injunction requiring the Reinharts to sign the letter or something similar. The chancellor treated the complaint as one to reform the deed to the purchasers and entered a decree reforming the deed to include the description of a drainage easement across the front of Lot 9.

## II.

The record shows that the front part of the property drains naturally to the south through a highway drainage ditch running alongside Highway 41 and across the front of Lot 9. The state does not always keep the ditch clear, and the brush growing in it impedes the flow of water from the north.

Mr. and Mrs. Reinhart were fearful that a high density development on the property they sold would substantially increase the runoff across the property they retained. They testified that the purchasers assured them that they would not further subdivide the eight lots, but then they found out that the purchasers intended to build sixteen houses on the eight lots. Therefore, they refused to sign the drainage letter.

The engineering proof in the record shows that the development proposed by the plaintiffs would increase the runoff from the property by fifteen percent, but the additional water would raise the level in the drainage ditch only one inch. The one inch increase in the water level would increase the width of the water stream across Lot 9 by approximately three feet.

After hearing the proof, the chancellor made the following findings:

THE COURT: Well, considering everything that has been presented in this case, I am confident that Mr. and Mrs. Reinhart understood that this water was going to be coming down on their property, and they needed to give some sort of easement for that . . . So, I am convinced that there needs to be something concerning the drainage from this other property across Mr. Reinhart's property.

\* \* \*

I certainly don't think it was intended by anybody to let these folks just run water wherever they want to on Mr. Reinhart's property. I assume it was to take the natural flow. Evidently that's the natural drainage there right now and has been. And that that's what he intended that they could keep on using that.

Rather than issuing a mandatory injunction, I would be more inclined to say that this warranty deed needs to be reformed so as to contain an easement about this. I do think that an engineer or somebody that knows how

- 3 -

needs to kind of show where this drainage, if it is a natural drainage, and I take it from the testimony that it is, that that could have some description to it.

\* \* \*

I really wouldn't feel comfortable in granting a mandatory injunction for Mr. and Mrs. Reinhart to sign this consent letter. I would be inclined, and I take it this is all of the proof that either of you could submit on this issue; I feel like it would be proper for me to treat this as a complaint to reform the deed. Put in the deed a description of the natural drainage of this water. And when that is done, then I think that everybody will have done exactly what they meant to starting out with.

That's the way I am going to treat this. Rather than a petition for mandatory injunction, I am going to treat it as a complaint to reform the deed. I am going to require an order that the deed be reformed so as to contain this easement. I think that's the easement that Mr. and Mrs. Reinhart had in mind when they signed this contract consenting to an easement.

The final judgment contained an order reforming the plaintiffs' deed to include a drainage easement across Lot 9. The description roughly follows the ditch along Highway 41.

## III.

Mr. and Mrs. Reinhart insist that the chancellor erred in finding that they agreed to grant the plaintiffs a drainage easement across Lot 9. The finding is, of course, presumed to be correct, unless the preponderance of the evidence is otherwise. Rule 13(d), Tenn. R. App. Proc. We think the evidence fully supports the chancellor's findings -- even without the presumption. The evidence from the auctioneer, the provision in the contract (even though it does not mention a drainage easement), and the testimony from the parties, make it clear that Mr. and Mrs. Reinhart agreed that the property they were selling had to drain to the south across the property they intended to keep.

- 4 -

The puzzling thing about this whole controversy is the fact that the development of the property sold will not change the natural drainage. The surface water now flows in a southerly direction, basically down the highway side ditch. It is true that the development planned by the plaintiffs will increase the surface water runoff by fifteen percent, but the expert testimony in the record indicates that the impact on Lot 9 will be minimal.

The Reinharts also complain that the contract did not contain a description of the easement. We find, however, that the chancellor's location of the easement will have the least impact on the Reinharts' property. It seems to be obvious that locating the easement along the existing drainage ditch is preferable to locating it at any other place on the property.

## IV.

The Reinharts also insist that the chancellor erred in treating the complaint for a mandatory injunction as a complaint to reform the deed. We note, however, that the complaint contained a prayer for "such other further and general relief to which they may be entitled in equity and good conscience . . . ." *Gibson's Suits in Chancery* (VI Ed. § 220) states that "[i]f the plaintiff is not entitled to the specific relief he prays, he may under the general prayer have such other relief as the pleadings and proof will justify, provided it is not of a character to take the defendant by surprise." The Reinharts could hardly claim surprise where the original complaint prayed for a mandatory injunction requiring them to execute a grant of a general easement and the chancellor reformed their deed to include a grant of a particular easement. The relief was for all practical purposes the same as the relief asked for in the complaint. We think the chancellor's action falls well within his power to grant "such relief as is consistent with the scope and object of the bill." *Hayes v. Pamplin*, 2 Tenn. Cas. 630, 2 Shannon 630 (Tenn. 1878).

## V.

We have already dealt with the Reinharts' final contention that the fifteen percent increase in the runoff from the plaintiffs' property is an unreasonable burden on their property, a taking of their property, and a nuisance. In fact, the record seems to indicate that the Reinhart property will not be affected very much. Raising the water level in the existing ditch one inch, and causing the water to spread out three feet from its current width can hardly be considered a major impact on the land.

## VI.

The plaintiffs have acknowledged that they have a duty to keep the easement cleaned out so that the water will flow freely across Lot 9. The lower court's judgment will be modified to impose that duty on the plaintiffs and their successors in title whose property is benefitted by the easement.

The judgment of the court below is affirmed as modified and the cause is remanded to the Chancery Court of Rutherford County for any further proceedings necessary. Tax the costs on appeal to the appellants.

_____
BEN H. CANTRELL, JUDGE

CONCUR:

_____
WILLIAM C. KOCH, JR., JUDGE

_____
WILLIAM B. CAIN, JUDGE